<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**</u>

|  |  |
|---|---|
| JOY COHEN, : : Plaintiff, : : v. : : WOLPOFF & ABRAMSON, LLP, et al., : : Defendants. : | Civil Action No. 08-1084 (SRC)  **OPINION** |

<u>**CHESLER, U.S.D.J.**</u>

This matter comes before this Court on two motions: 1) the motion to compel arbitration and stay or dismiss proceedings or, in the alternative, to dismiss Plaintiff's Complaint for failure to state a claim (Docket Entry No. 15) by Defendants Wolpoff & Abramson, LLP, Ronald M. Abramson, Barry E. Gordon, and Ronald S. Canter (collectively, "Defendants"); and 2) the motion for partial summary judgment (Docket Entry No. 16), pursuant to FED. R. CIV. P. 56, by Plaintiff Joy Cohen ("Cohen"). For the reasons stated below, Defendants' motion to compel arbitration and stay or dismiss proceedings will be denied. Defendants' motion to dismiss will be granted, and the Complaint will be dismissed with prejudice. Plaintiff's motion for partial summary judgment will be denied.

**I. BACKGROUND**

This case stems from Defendants' activities in collecting a debt claimed by FIA Card Services, N.A. ("FIA"). The parties do not dispute the following facts. FIA retained Defendant

law firm Wolpoff & Abramson, LLP, located in Maryland, and its attorney employees, the remaining individual defendants, to collect the alleged debt from Plaintiff. On March 6, 2007, Defendants filed a claim with the National Arbitration Forum ("NAF"), seeking to initiate arbitration of FIA's claim against Cohen. After conducting an arbitration process, the arbitrator issued a decision in favor of FIA. FIA filed suit in the Superior Court of New Jersey, Bergen County: Law Division, seeking confirmation of the award. On February 6, 2008, the Superior Court entered an order confirming the arbitration award and entering judgment in FIA's favor.

On February 29, 2008, Plaintiff filed the Complaint in this action, asserting four claims: I) communication with a third party in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692c(b); II) misrepresentation and use of unfair or unconscionable means to collect a debt in violation of FDCPA §§ 1692e(3) and 1692f; III) misrepresentation in violation of the New Jersey Consumer Fraud Act; and IV) the preceding three claims brought on behalf of a class of similarly situated persons. On May 27, 2008, Defendants filed the first of the motions presently before the Court. On June 13, 2008, Plaintiff filed the second of the motions, the motion for partial summary judgment.

## II.  STANDARD OF REVIEW

### A.    Motion To Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A Rule 12(b)(6) motion to dismiss

should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 127 S. Ct. at 1964 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil 2d § 1357 at 340 (2d ed. 1990)).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not credit bald assertions or legal conclusions. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the

allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." New York v. Hill, 528 U.S. 110, 118 (2000). Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

### III.  ANALYSIS

#### A.   Defendants' motion to compel arbitration

Defendants ask this Court to compel arbitration to resolve this case, relying on two arguments: 1) the New Jersey state court judgment confirming the arbitration award constitutes a conclusive adjudication that Plaintiff is bound by the arbitration provision in the agreement she entered into with FIA; and 2) that arbitration provision requires that this case be resolved by arbitration. In opposition, Plaintiff argues: 1) no arbitration contract was ever formed; 2) the issue of whether an arbitration contract was ever formed was not actually determined by the state court; and 3) this case is not within the scope of the clear terms of the arbitration provision cited

by Defendants.

This Court concludes that it need not address the arguments regarding whether an arbitration contract was ever formed or the estoppel effect of the state court adjudication. Even if, for the sake of argument, this Court were to agree with Defendants that Plaintiff is bound by the arbitration provision they cite, Plaintiff is correct that this case does not fall within the scope of the clear language of that provision.

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." First Options v. Kaplan, 514 U.S. 938, 943 (1995). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." Id. at 944.

Defendants assert that Plaintiff agreed to arbitration under the following provision in the agreement with FIA:

> Any claim or dispute ('Claim') by either you or us against the other, or against the employees, agents, or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise, and whether for money damages, penalties, or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration and Litigation section of the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration.

(Compl. at 70.) Defendants contend that they are agents of FIA, and so this dispute must be resolved by binding arbitration. Plaintiff does not concede that this agreement binds her, but point to this definition in the agreement:

> For the purposes of this Arbitration and Litigation section, 'we' and 'us' means MBNA American Bank, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your account, and all of

5

>their officers, directors, employees, agents, and assigns or any and all of them. Additionally, 'we' and 'us' shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to . . . debt collectors, and all of their officers, directors, employees and agents) if, and only if, such a third party is named by you as a codefendant in any Claim you assert against us.

(Compl. at 70-71.)

Plaintiff contends that this provision clearly states that debt collectors come within the scope of the arbitration provision "if, and only if, such a third party is named by you as a codefendant in any Claim you assert against us." The parties do not dispute that FIA is the successor to MBNA. Because Plaintiff did not name either FIA or MBNA as a co-defendant in the suit she brought against Defendants, Plaintiff contends, the arbitration provision does not require that this dispute be resolved by arbitration.

In reply, Defendants argue, in essence, that the relevant language in the arbitration provision is ambiguous and that the arbitrator should interpret the contract to resolve the ambiguity. Not only does this Court disagree about the ambiguity of the relevant language, but Defendants have misread the Supreme Court decisions that they cite in support. The Supreme Court has clearly established that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs. v. Communications Workers of Am., 475 U.S. 643, 649 (1986). Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 451 (2003), does not state anything to the contrary. Rather, in Green Tree, the Supreme Court took pains to distinguish the question at issue in that case – "what kind of arbitration proceeding the parties agreed to" – from the question at issue in this case – "whether they agreed to arbitrate a matter." Id. at 452. In the

6

instant matter, the question is whether the parties agreed to arbitrate this matter, which is a "gateway matter" that courts assume that parties intend for courts to decide. Id. Under AT&T, the question of whether the parties agreed to arbitrate would be decided by the arbitrator only when it is "clear and unmistakable" that the parties agreed to do so. 475 U.S. at 649. Such is not the case here.

This Court finds the language of the arbitration provision, including the definition of "we" and "us," to be clear and unambiguous. The arbitration provision that Defendants rely on only requires arbitration when the credit card company has been named as a co-defendant in a suit. Here, because Plaintiff did not name either FIA or MBNA as a co-defendant in this suit, this case does not fall within the scope of the arbitration provision. The parties did not agree to submit the present disputes to arbitration. Defendants' motion to compel arbitration will be denied.

**B.      Defendants' motion to dismiss**

       1.      Count I: violation of 15 U.S.C. § 1692c(b)

Defendants move to dismiss Count I, for communication with a third party in violation of 15 U.S.C. § 1692c(b), arguing that the Supreme Court's decision in Heintz v. Jenkins, 514 U.S. 291, 296 (1995), establishes that there is no cause of a action under the FDCPA for an attorney's communication with an arbitration forum.

Section 1692c(b) states:

Communication with third parties. Except as provided in section 804 [15 USCS § 1692b], without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt,

>with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Count I alleges that, on March 6, 2007, Defendants communicated with the NAF in connection with the collection of a debt, in violation of § 1692c(b). The parties do not dispute that the communication was for the purpose of initiating arbitration in pursuit of collection of the alleged debt. Defendants do not dispute that a literal reading of § 1692c(b) does suggest that the provision bars such a communication. Defendants argue that reading the provision this way, however, operates to divest creditors of their right to pursue remedies allowed under the contract between creditor and debtor, and that the Supreme Court disapproved of such an interpretive outcome in Heintz.

In Heintz, the Court held that attorneys who regularly engaged in attempts to collect debts were debt collectors under the FDCPA. 514 U.S. at 291. While the Heintz Court did not rule on the question presently at issue, the decision has relevant dicta. One party argued that, read literally, the provision requiring a debt collector to cease communications with a nonconsenting consumer could be understood to prevent an attorney from filing a lawsuit against that consumer. Id. at 296. The Court stated:

>We agree with Heintz that it would be odd if the Act empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt. But, it is not necessary to read § 1692c(c) in that way – if only because that provision has exceptions that permit communications 'to notify the consumer that the debt collector or creditor may invoke' or 'intends to invoke' a 'specified remedy' (of a kind 'ordinarily invoked by [the] debt collector or creditor'). §§ 1692c(c)(2), (3). Courts can read these exceptions, plausibly, to imply that they authorize the actual invocation of the remedy that the collector 'intends to invoke.' The language permits such a reading, for an ordinary court-related document does, in fact, 'notify' its recipient that the creditor may 'invoke' a judicial remedy. Moreover,

8

> the interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies. We need not authoritatively interpret the Act's conduct-regulating provisions now, however. Rather, we rest our conclusions upon the fact that it is easier to read § 1692c(c) as containing some such additional, implicit, exception than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself.

Id. at 296-297.

In this discussion, the Supreme Court examined the FDCPA provisions regarding communication with the consumer, rather than with third parties, as in this case. The discussion is nonetheless relevant to the question at hand. The Supreme Court stated that it would be "odd" to construe the FDCPA so as to empower a debt-owing consumer to cause an ordinary debt-collecting lawsuit to grind to a halt. This is an understatement, since it would an be extreme interpretation indeed – one, really, that makes fools of Congress and the courts – to construe the FDCPA so as to bar an attorney from communicating with a forum in pursuit of a legal remedy. Plaintiff has pointed to no evidence that Congress intended such an outcome. Rather, the Supreme Court found it "apparent" that Congress intended that the FDCPA preserve creditors' judicial remedies.

Moreover, as the Supreme Court notes, such an interpretation conflicts with the language of § 1692c, which implies an exception to the restrictions of the FDCPA to allow the pursuit of the ordinary remedies that debt collectors pursue. Reading § 1692c as the Supreme Court did, an attorney's communication with a forum in pursuit of arbitration – surely an ordinary remedy – would come within the scope of such an exception.

Although the Supreme Court's discussion in Heintz is dicta, rather than controlling authority, it is persuasive dicta, and ultimately far more sensible than the position Plaintiff

advocates. If Plaintiff's interpretation is correct, Congress wrote the FDCPA so as to tie the law in knots – simultaneously allowing and forbidding the pursuit of ordinary legal remedies by debt collectors. It would be foolish indeed to construe the statutory language of the FDCPA to find that it prohibits in one provision what it implies authorization for in another.

Furthermore,

This Court concludes that the FDCPA does not prohibit an attorney from communicating with a forum in pursuit of a legal remedy. There is no cause of action under the FDCPA for an attorney's communication with a forum in pursuit of a legal remedy. Moreover, this defect in Count I cannot be remediated by repleading: there is no possibility that Plaintiff could amend the Complaint to state a valid cause of action for violation of the FDCPA based on these factual allegations. Defendants' motion to dismiss Count I will be granted. Because amendment is futile, Count I will be dismissed with prejudice.

2. Count II: violation of 15 U.S.C. §§ 1692e(3) and 1692f

Defendants move to dismiss Count II, for misrepresentation in violation of § 1692e(3) and use of unfair and unconscionable means to collect debt in violation of § 1692f. In brief, Count II rests on allegations that Plaintiff resides in New Jersey, Defendants "held themselves out as being authorized to practice law with respect to the arbitration of FIA's claims," and that Defendants have not been admitted to the bar in New Jersey. (Compl. ¶ 53, 56, 59.) Plaintiff argues that Defendants violated Rule 5.5 of the New Jersey Supreme Court's Rules of Professional Conduct ("RPC"), which sets forth requirements for the practice of law within New Jersey by attorneys licensed in other jurisdictions, and that, pursuant to Opinion 43 of the New Jersey Supreme Court's Committee on the Unauthorized Practice of Law, Defendants have

engaged in the unauthorized practice of law in New Jersey. Plaintiff contends that Defendants engaged in misrepresentation, in violation of § 1692e(3), when, in pursuing the arbitration, they represented themselves to her as attorneys. Plaintiff also contends that Defendants' unauthorized practice of law constitutes use of unfair and unconscionable means to collect debt in violation of § 1692f.

Defendants move to dismiss Count II on three grounds: 1) Defendants did not engage in the practice of law within New Jersey; 2) Count II is an impermissible collateral attack on the arbitration award; and 3) claims for the unauthorized practice of law do not give rise to a cause of action under the FDCPA. Because this Court finds the last argument persuasive, it need not address the other two points.

Plaintiff's claim for misrepresentation fails because Plaintiff has not stated a valid claim for relief under § 1692e(3). Section § 1692e of the FDCPA states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>  . . .
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

'[L]ender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor." Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006); see also Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (applying this standard to a claim under § 1692e(3)). The Third Circuit has observed that, while "the least sophisticated debtor standard protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a

quotient of reasonableness." Brown, 464 F.3d at 454 (citation omitted). The goal of preserving reasonableness requires that Plaintiff's legal theory be rejected.

The statute bars false representation that an individual is an attorney. Plaintiff has alleged that Defendants represented themselves as attorneys but concedes that Defendants are, in fact, attorneys. The statute does not additionally require that the attorney conform to a particular state's rules of professional conduct, nor does it limit the definition of "attorney" based on state of licensure and state of practice. Plaintiff concedes that the FDCPA does not define "attorney," but argues that "it must mean someone authorized to practice law in the jurisdiction where the debt could be enforced against the consumer." (Pl.'s Mot. Dismiss Opp. Br. 19.) This one sentence is Plaintiff's entire argument for finding this definition implied in the FDCPA. Plaintiff does not explain why "attorney" must mean what Plaintiff proposes, nor does this Court find it evident that "attorney," in the context of the FDCPA, does not have its ordinary meaning.

Plaintiff points to nothing within the FDCPA that would allow this Court to find that an attorney licensed in one jurisdiction who engaged in debt collection in another jurisdiction is not an attorney within the meaning of the FDCPA. Nor does the fact that the Third Circuit's "least sophisticated debtor" standard is a "low standard" help Plaintiff to get past this low hurdle: not even the least sophisticated debtor could be deceived when a communication which states that it is from an attorney is, in fact, from an attorney. Rosenau, 539 F.3d at 221. Plaintiff has failed to allege a valid claim for relief.

Plaintiff's claim that Defendants' unauthorized practice of law constitutes use of unfair and unconscionable means to collect debt, in violation of § 1692f, also fails to state a valid claim for relief. The regulation of the practice of law is a matter of concern to the states which regulate

it. Plaintiff here seeks to import this matter of concern to the states – state-specific rules of attorney discipline – into federal legislation. Plaintiff has pointed to no evidence that Congress intended the FDCPA to rely on state rules of attorney discipline or to enforce them. Plaintiff does not even propose that Congress considered issues of multi-jurisdictional law practice and intended to wade into the thicket of issues in this unsettled area of law. It appears to this Court that, to the contrary, questions of multi-jurisdictional law practice are quite remote from the stated purpose of Congress in enacting the FDCPA: "It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). There is nothing in this statement of purpose, nor has Plaintiff pointed to anything, that suggests that Congress included within the scope of abusive practices multi-jurisdictional collection efforts by attorneys. Rather, the legislative history suggests that the concern raised by Plaintiff differs significantly from the practices considered abusive by Congress:

> Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

Sen. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.

The Third Circuit has stated: "Because the FDCPA is a remedial statute, we construe its language broadly, so as to effect its purpose." Brown, 464 F.3d at 453. Plaintiff asks for a construction of the FDCPA so broad that it would stray far from effecting the statute's purpose.

13

There is no evidence that Congress intended that the FDCPA address issues of authorization involved in multi-jurisdictional law practice.

District courts in other jurisdictions have concluded that unauthorized practice of law claims are not cognizable under the FDCPA. See, e.g., Lavender v. Wolpoff & Abramson, L.L.P., 2007 U.S. Dist. LEXIS 81255 (W.D. Mo. Nov. 1, 2007) (claim for unauthorized practice of law not cognizable under FDCPA); Anderson v. Gamache & Myers, P.C., 2007 U.S. Dist. LEXIS 39446 (E.D. Mo. May 31, 2007) (same); Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 369 F. Supp. 2d 353, 361 (E.D.N.Y. 2005) (same); Bass v. Arrow Fin. Servs. L.L.C., 2002 U.S. Dist. LEXIS 12909 (N.D. Ill. July 15, 2002) (same). The Bass court observed that such claims are the "province of state bar associations and state courts." Id. at *8.

In Count II, Plaintiff attempts to base a civil suit for damages on alleged violations of the Rules of Professional Conduct. In Baxt v. Liloia, 155 N.J. 190, 198 (1998), the New Jersey Supreme Court clearly stated that a breach of the Rules of Professional Conduct does not give rise to a cause of action. The Court explained: "The disciplinary rules serve purposes that are substantially different from those of an individual litigant in a civil action." Id. at 202. The Rules of Professional Conduct are intended to regulate attorney conduct, not to create civil liability. Id. Recognizing the causes of action Plaintiff asserts in Count II thus serves the goals of neither the FDCPA nor the Rules of Professional Conduct. Rather, it would run counter to the policies underlying the Rules of Professional Conduct.

This Court concludes that claims for the unauthorized practice of law do not state a cause of action for use of unfair and unconscionable means to collect debt, in violation of § 1692f. Furthermore, because this Court rejects the legal theories on which Count II is founded – that

14

attorneys practicing in a jurisdiction in which they are not admitted are not attorneys within the meaning of the FDCPA, and that the unauthorized practice of law may violate FDCPA § 1692f – amendment of this claim is futile. Defendants' motion to dismiss Count II will be granted, and Count II will be dismissed with prejudice.

        3.      Count III: violation of the New Jersey Consumer Fraud Act

Defendants move to dismiss Count III, for violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-2. Although the Complaint does not specify the conduct alleged to violate the CFA, Plaintiff's opposition brief states: "The second count asserts claims based on Defendants' misrepresentation of themselves as authorized to practice law in New Jersey." (Pl.'s Mot. Dismiss Opp. Br. 19.)

Plaintiff concedes that, in Macedo v. Dello Russo, 178 N.J. 340, 346 (2004), the New Jersey held that "advertisements by learned professionals in respect of the rendering of professional services are insulated from the CFA." Plaintiff contends, without explanation, that, somehow, Count III states a valid claim for relief despite this. It does not. The New Jersey Supreme Court has clearly stated that the CFA does not apply to advertisements by learned professionals, such as attorneys, in respect to rendering professional services. Plaintiff's allegations of misrepresentation fall within the ambit of this exclusion. Thus, even accepting as true that Defendants misrepresented themselves as authorized to practice law in New Jersey, under Macedo, Plaintiff has failed to state a valid claim for relief. Amendment is futile, since Count III cannot possibly be valid under Macedo. Defendants' motion to dismiss Count III will be granted, and Count III will be dismissed with prejudice.

Count IV is a class claim which asserts Counts I, II, and III for the proposed class and

15

thus depends on their validity.  Because this Court has determined that Counts I, II, and III fail to state valid claims for relief, and will dismiss them with prejudice, Count IV must also be dismissed with prejudice.

Because the Complaint will be dismissed, Plaintiff's motion for partial summary judgment will be denied as moot.

### IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration and stay or dismiss proceedings is denied.  Defendants' motion to dismiss is granted, and the Complaint is dismissed with prejudice.  Plaintiff's motion for partial summary judgment is denied as moot.

    s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: October 1, 2008